583 So.2d 654 (1991)
Karen HAMLET, Petitioner,
v.
John E. HAMLET, Jr., Respondent.
No. 75177.
Supreme Court of Florida.
June 13, 1991.
Rehearing Denied August 23, 1991.
*655 Marcia K. Lippincott of Marcia K. Lippincott, P.A., Orlando, for petitioner.
Thomas M. Ervin, Jr. and Margaret A. McCall of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, and David U. Strawn, Orlando, for respondent.
OVERTON, Justice.
Karen Hamlet petitions this Court to review Hamlet v. Hamlet, 552 So.2d 210 (Fla. 5th DCA 1989), in which the Fifth District Court of Appeal held that it was error for a trial court to award permanent periodic alimony in circumstances where there was equitable distribution of substantial assets to both parties. We find conflict with Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).[1] For the reasons expressed, we quash the decision of the Fifth District Court of Appeal and direct that the final judgment entered by the trial court be reinstated.
The Hamlets' marriage lasted approximately twenty-two years, the parties having been married on September 3, 1965, and separated in May of 1987. The record reflects that Karen Hamlet earned a college degree in business, but she did not pursue a business career after the marriage. Instead, she accepted the responsibility of running the household, raising the children, and participating in numerous civic activities. In the trial court proceeding, there was evidence that Mrs. Hamlet was having difficulty obtaining employment after the parties separated due to her lack of experience. The record also establishes that John Hamlet is a successful, self-employed businessman. He founded a computer software company which was subsequently purchased by a large insurance company, and he is regularly engaged in multiple stock transactions. His financial affidavit dated September 1, 1987, indicates an average monthly gross income of $41,136, and his March 31, 1988, affidavit indicates an average monthly gross income of $16,125. The parties had approximately $3,000,000 in assets for distribution, and each received in excess of $1,000,000 in marital assets as part of the equitable distribution in the final judgment.
The parties agreed to a summary hearing procedure instead of a traditional trial. Accordingly, each of the parties submitted evidence in the form of written proposals and arguments, followed by written rebuttals. Each party was then allowed to testify, after which counsel presented arguments to the court. The parties then submitted proposals to the court, which later entered its final judgment of dissolution of marriage.
The final judgment provided for the equitable distribution of the marital estate in paragraph 3, entitled "EQUITABLE DISTRIBUTION." In subparagraph 3.A. it identified the specific marital property awarded to the wife. In subparagraph 3.B. it identified the specific marital property awarded to the husband. In subparagraph 3.C. it distributed specifically identified, jointly owned personal property. In subparagraph 3.D. it awarded the coin collection or $292,371 to the wife, at the election of the husband. In subparagraphs 3.E. and 3.F. it explained how these distributions would be implemented. Paragraph 4 was entitled "ALIMONY." Subparagraph 4.A. directed the husband to pay to the wife $4,000 per month as permanent periodic alimony, and subparagraph 4.B. directed the husband to pay, as alimony for one year, an amount necessary to take care of the wife's reasonable and necessary medical, hospital, and dental expenses. The judgment further provided that each of the parties would pay his or her own attorney's fees.
*656 John Hamlet appealed only that part of the judgment awarding monthly alimony of $4,000 to Karen Hamlet. The district court reversed the alimony award and stated:
From the judgment entered below, it cannot be mathematically ascertained that the trial court equally divided those investments, since there were no specific findings in regard to the value of individual items. Since the trial court found that there was an equitable distribution of these properties, and that finding is not challenged on appeal by either party, we must accept it.
Hamlet, 552 So.2d at 211. The district court then concluded that the trial court had no authority to award permanent periodic alimony, stating:
From that point, it follows that it was error to award pure alimony to the wife in addition to the equitable distribution of the investment assets....
As argued in the husband's brief: "An award of alimony, where substantial assets have been equally divided between the two similarly situated spouses, giving them equal and complete ability to provide for their support, constitutes an abuse of discretion and must be reversed."
Id. (citations omitted).[2]
In a dissent, Judge Sharp noted that "[t]he distribution of marital assets and an award of permanent periodic alimony, inter alia, as remedies in a dissolution proceeding, are parts of an overall scheme that should be reviewed `not piecemeal but as a whole.'" Id. (Sharp, J., dissenting) (quoting Thompson v. Thompson, 546 So.2d 99, 100 (Fla. 4th DCA 1989)). The dissent also noted that the record could support the conclusion that the amount of marital assets awarded to the wife differed from that awarded to the husband, and, consequently, periodic alimony could be considered a counterbalance to that asset distribution.
There are two legal principles that must be considered in light of the district court decision. The first is the authority of the trial court to award permanent periodic alimony when there has been a substantial distribution of assets to the spouse receiving the alimony. The second is the requirement that an appellate court review the overall scheme of a property and alimony distribution when considering whether or not the trial court abused its discretion in entering the judgment.
With regard to the first principle, in Canakaris we stated the following:
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates.
... .
While permanent periodic alimony is most commonly used to provide support, in limited circumstances its use may be appropriate to balance such inequities as might result from the allocation of income-generating properties acquired during the marriage. Patterson v. Patterson, 315 So.2d 104 (Fla. 4th DCA 1975).
382 So.2d at 1201-02 (emphasis added). It is clear that we intended to allow permanent periodic alimony to be used by trial judges to appropriately balance inequities that might result from property disposition in the final judgment. We note that there is evidence in this record that could support the need for alimony, such as the disparity in the parties' earning abilities, attributable *657 in part to Karen Hamlet's twenty-two-year absence from the work force during the marriage, and the parties' standard of living.
With regard to the second issue, we again emphasize that an appellate court, in reviewing a dissolution judgment, must examine the judgment as a whole in determining whether the trial court abused its discretion. In Canakaris, we stated:
Dissolution proceedings present a trial judge with the difficult problem of apportioning assets acquired by the parties and providing necessary support. The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of exclusive possession of property. As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme. It is extremely important that they also be reviewed by appellate courts as a whole, rather than independently.
Id. at 1202. The district court clearly did not do so in this instance. Its decision was based on its view that when there is a distribution of substantial assets to the parties, the trial court has no authority to award permanent periodic alimony. This view is both an application of an erroneous rule of law and a piecemeal approach to the consideration of a final judgment. We find that the district court had no basis to hold that the trial judge abused his discretion without considering the judgment as a whole and, particularly, whether the trial judge utilized alimony to balance inequities. A party seeking relief and claiming that the trial court abused its discretion has the burden of presenting a record that would justify a conclusion that the judgment was arbitrary or unreasonable. See Canakaris. The district court majority opinion concedes that "it cannot be mathematically ascertained that the trial court equally divided those investments." 552 So.2d at 211. Further, this record does contain evidence that would justify a conclusion that there was a difference between the values of the assets distributed to each spouse, as noted in the dissent of Judge Sharp. In addition, the record also supports a conclusion that Karen Hamlet's earning capacity had been diminished because of the twenty-two years she spent taking care of the couple's home and their two children.
John Hamlet, in the appeal before the district court, had the burden to show that the judgment entered by the trial court, when taken as a whole, constituted an abuse of the trial court's discretion. This record clearly does not support such a conclusion. Accordingly, we quash the decision of the Fifth District Court of Appeal with directions that the trial court judgment be affirmed.
It is so ordered.
SHAW, C.J. and McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[2] The words, "have been equally divided between the two," appear in the district court's opinion but were not published in the Southern Reporter, Second Series. See Hamlet v. Hamlet, 552 So.2d 210 (Fla. 5th DCA 1989); see also Hamlet v. Hamlet, 552 So.2d 210 (Fla. 5th DCA 1989).